JOHN FUGATE and JEAN FUGATE (Deceased), et al., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Fugate v. Commissioner
Docket Nos. 1114-71, 1115-71 and 1116-71.
United States Tax Court
T.C. Memo 1973-18; 1973 Tax Ct. Memo LEXIS 266; 32 T.C.M. (CCH) 68; T.C.M. (RIA) 73018; January 29, 1973, Filed *266 Held: Petitioner is taxable on the gain from the sale of certain lots in 1965 and 1966. Held, further: Petitioner may not report the gain from the sale of certain lots in 1967 on the installment method, but he may report the gain from lots sold in 1968 on the installment method for those sales in which the payment received in 1968 did not exceed 30 percent of the contract price. Held, further: Petitioner is liable for the addition to tax under section 6651(a) (1) for 1965. Lee S. Jones, for the petitioners. Christopher D. Rhodes, for the respondent. IRWIN
MEMORANDUM OPINION IRWIN, Judge: Respondent determined the following deficiencies in income tax and additions to tax against petitioners: Petitioners
Year
Deficiency
Addition to Tax Section 6651(a) (1) John Fugate and Jean Fugate (Deceased)
1965
$5,638.62
$563.86
John Fugate, Jr.
1966
15,499.44
1967
1,812.17
John Fugate, Jr. and Marvalene Fugate
1968
11,031.47
Several issues were settled prior to trial leaving the following issues for decision: (1) whether petitioners are taxable on the gain from the sale of real estate in 1965 and 1966; (2) whether petitioners may use the installment method to report gain from certain sales of real estate *267 in 1967 and 1968; and (3) whether petitioners are liable for the addition to tax for 1965 under section 6651(a) (1). [2]
All of the facts have been stipulated and they are so found. At all relevant times petitioner John Fugate resided in Grand Rivers, Ky. For 1965 petitioner John Fugate filed a joint income tax return with his wife, Jean Fugate, who died on January 8, 1965. For 1966 and 1967 John Fugate filed individual income tax returns. For 1968 John Fugate 3 filed a joint return with his wife Marvalene Fugate. Jean Fugate and Marvalene are petitioners solely by reason of the filing of such joint returns. Hereafter, the term petitioner shall refer solely to John Fugate. On June 13, 1964, petitioner and Lee S. Jones entered into a contract concerning Parkview Manor Subdivision, Marshall County, Ky. This contract was labeled "CONTRACT OF SALE" and provided that petitioner would pay to the seller, Lee S. Jones, $87,000 for Parkview Manor Subdivision. Petitioner was to pay installments of $10,000 or more each year until the $87,000 was paid with interest at the rate of six percent, beginning June *268 1, 1965. Title to the real property would remain in the seller until the purchase price had been paid in full, except in the event that petitioner elected to sell lots. In that case lots would be conveyed to petitioner if the sales price of the particular lot was paid. Under the agreement petitioner was responsible for payment of taxes on the property. The following is a list of lots sold in Parkview Manor Subdivision during 1965, 1966 and 1967: 4 Lot
Sale Price 1965
Block E, Lots 8, 9, 10, 11, 12, 13
$6,500
Block E, Lots 19 & 20
3,000
Block D, Lot 12
1,500
Block D, Lots 15 & 16
2,500
Block E, Lots 3 & 4
2,000
Block E, Lot 2
1,750
Block G, Lots 36, 37, 38
6,000
Block E, Lot 7
1,500 1966 Block F, Lot 16
1,500
Block G, Lot 45
2,000
Block F, Lots 8, 10, 18, &Block E, Lots 22, 23, 29
12,000
Block F, Lot 6
1,000
Block E, Lot 6
1,500
Block E, Lot 5
1,500
Block F, Lot 13
1,500
Block D, Lot 10 [3]
2,000 1967 Block F, Lot 14
1,500
Block F, Lot 7
1,500
Block F, Lot 2
2,000
Block E, Lots 24 & 25
3,500
Block F, Lot 17
1,000
Lee S. Jones executed a deed conveying title to *269 one lot in Parkview Manor Subsivision in 1964 to petitioner in accordance with the terms of the contract. This deed was never used and never recorded because the Commonwealth of Kentucky had filed tax liens against John Fugate. If the deed had been recorded, the Commonwealth of Kentucky could have seized the property. All deeds for lot sales for 1965 and 1966 were from Lee S. Jones to the respective lot purchaser. 5 In February 1967 petitioner was in default on his contract of sale dated June 13, 1964. Thereupon, Lee S. Jones elected to declare the contract in default and required petitioner to pay cash in the sum of $67,000. John Fugate and Lee S. Jones agreed on an accounting relating to their contract for the sale and purchase of Parkview Manor Subdivision on February 8, 1967. On the same date the purchase price of the subdivision reduced to account for payments made from $87,000 to $67,000 which was paid at that time, and a deed was executed conveying the property to John Fugate. The following information relates to lots sold in Parkview Manor Subdivision during 1968: Lot
Sale Price
Down Payment
Additional Collections During 1968 Block F, Lot 19
$1,500
$1,500
Block F, Lots 28 & 29
3,950
3.950
Block G, Lots 48 & 49
2,300
2,300
Block G, Lot 61
1,050
1,050
Block A, Lot 1
1,700
1,700
Block G, Lots 47 & 52
2,825
2,825
Block F, Lot1
1,550
1,550
Block F, Lot 30
1,800
360
$108.86
Block G, Lots 54 & 55
3,550
1,050
Block F, Lot 15 & Block G, Lot 53
4,225
845
255.47
Block F, Lot 31
1,650
350
98.28
Block G, Lot 59
1,450
300
116.26
Block G, Lot 57 & Block F, Lots 20, 21, 22, 23 & 24
8,875
1,775
717.60
Block G, Lot 51
1,400
620
Block D, Lots 8, 9, 10 Shop Center
12,000
3,025
*270 6 On brief petitioner claims that he made no down payment upon entering into the contract with Jones and that immediately after executing the agreement he became in default. He contends that these facts indicate that he had no benefits of ownership in the subdivision and that Jones rather than petitioner sold the lots from the subdivision in 1965 and 1966. Unfortunately, the factual basis for petitioner's contentions is not in the fully stipulated record. The record does indicate that the land contract was signed in June 1964 and that Jones did not declare petitioner in default until nearly two-and-one-half years later. This fact plus the fact that regular deposits were made in the escrow bank accounts specified in the land contract indicate that the parties treated the contract as in force during 1965 and 1966. We note that under Kentucky law a land contract like the one between petitioner and Jones vests the benefits and burdens of ownership in the purchaser even though the seller retains legal title to the property. . In view of petitioner's failure to offer evidence tending to show that he did not have the benefits and burdens *271 of ownership of the subdivision in 1965 and 1966 we sustain respondent's determination that he is taxable on 7 the gain from the sale of lots from the subdivision during these years. The parties are in agreement that petitioner is taxable on the gain from the sale of lots in the subdivision during 1967 and 1968; however, petitioner claims that he may report this gain using the installment method. In the case of sales of real property section 453(b) (2) (A) limits the use of the installment method to transactions in which no more than 30 percent of the contract price is paid within the taxable year of sale. Petitioner stipulated that he received full payment for all lots sold in 1967; accordingly, the installment method is simply not applicable to 1967 sales. Of the sales made in 1968 only eight were payable in installments; and of these eight petitioner's sale of Block G, Lot 51 fails to meet the requirements of section 453(b) (2) (A) since he received more than 30 percent of the selling price. Petitioner may report the gain from the remaining seven sales payable in installments using the installment method. Petitioner filed a joint income tax return for himself and his deceased *272 wife for 1965 on July 18, 1966. Petitioner has offered no reason either in his brief or on the record to show reasonable cause for the delinquent filing. Accordingly, we sustain respondent's imposition of the addition to tax under section 6651(a) (1) for 1965. Decisions will be entered under Rule 50. Footnotes
1. Cases of the following petitioners are consolidated herewith: John Fugate, Jr., docket No. 1115-71; and John Fugate, Jr. and Marvalene Fugate, docket No. 1116-71. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended. ↩
3. According to the stipulation of the parties this lot appears to have been sold to different purchasers in 1968. The discrepancy is not explained in the record. ↩